UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER McDANIEL, #720417

|  |  |
|---|---|
| Plaintiff, | Civil Action No. 15-13892 |
|  | Honorable Terrence G. Berg |
| v. | Magistrate Judge David R. Grand |

T. BECHARD and P. STEELE,

Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT [24]

This is a prisoner civil rights case commenced by *pro se* Plaintiff Christopher McDaniel ("McDaniel") on November 3, 2015, against Defendants T. Bechard ("Bechard") and P. Steele ("Steele") (collectively "Defendants"). An Order of Reference was entered on December 15, 2015, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (Doc. #10). Presently before the Court is Defendants' Motion to Dismiss and/or for Summary Judgment filed on January 31, 2017. (Doc. #24). On February 27, 2017, McDaniel filed a response to this motion[1], and Defendants filed a reply on March 15, 2017. (Docs. #30; #32). Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1(f). The facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

---

[1] Defendants' argument that McDaniel's response was untimely lacks merit. Although the Court ordered McDaniel to file his response by February 24, 2017 (Doc. #25), his response is dated February 23, 2017. (Doc. #30 at 48). Pursuant to the "prisoner mailbox rule," a *pro se* prisoner's complaint "is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing cases).

## I.     RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss and/or for Summary Judgment **[24]** be **GRANTED.**

## II.    REPORT

### A.    Background

#### 1.    The Parties

McDaniel is currently incarcerated by the Michigan Department of Corrections ("MDOC").   At all relevant times to the complaint, McDaniel was confined in Thumbs Correctional Facility in Lapeer, Michigan ("TCF").[2]  (Doc. #1 at 1).  Defendants Bechard and Steele are Aramark Food Services employees who work at TCF.  (*Id*.).

#### 2.    Underlying Incident

This case arises out of an incident that occurred on June 8, 2014[3], between McDaniel and Bechard when McDaniel was incarcerated at TCF.   McDaniel alleges that he and Bechard routinely had "disagreements over her disrespectful attitudes" towards him.  (*Id*. at 4).  He claims that on June 8, 2014, he and Bechard had a "final confrontation over her disrespect."  (*Id*. at 4).  McDaniel admits that when Bechard had her back towards him, he "threw both of [his] hands up," and used profanity towards her, but he denies actually striking her.  (Doc. #24-1 at 12).  It is undisputed that Bechard promptly reported the argument to "security," but made no mention at that time of any physical assault by McDaniel.  (Doc. #1 at 8).  An hour later, Bechard told other prison officers that he had struck her during the argument.  (*Id.*at 4).  Bechard then completed a Class-1 Misconduct Report against McDaniel for "Assault and Battery (staff victim)," alleging:

---

[2] The docket indicates that McDaniel is now incarcerated the Lakeland Correctional Facility in Coldwater, Michigan ("LCF").   (Doc. #12 at 1).

[3] In his complaint, McDaniel mistakenly identifies the date as June 18, 2014.  (Doc. #1 at 4).

> Inmate McDaniel was told that his work area was not acceptable [and that] various food items [were] mixed in with each other. He started making sound effects and laughing when I was standing on the chow line with my back to him. I felt something hit my back [and] as I turned around Inmate McDaniel['s] right arm was raised in the air toward me. I advised Inmate McDaniel to leave and return to his unit. Aramark staff member Steele asked me if I was alright, since he observed this incident.

(*Id*. at 6; *see also id.* at 7). McDaniel alleges that after the assault charge was filed against him he was placed in "segregation." (Doc. #30 at 12, 54).

An investigation was conducted, and Bechard was asked to explain why she initially reported only that "McDaniel was not following orders," without mentioning his alleged assault. (*Id*. at 8). Bechard responded that she was "shorthanded on the line" and "McDaniel was very argumentative, creating a disturbance." (*Id.*). Somewhat confusingly, she added, "Aramark staff mentioned . . . that McDaniel had struck me on the back, which I ***was aware*** of. Then [I] advised Officer Best what had happened." (*Id*. at 8) (emphasis added). McDaniel claims that Steele "plotted against [him] with Bechard and wrote a statement" corroborating Bechard's assertion that an assault had occurred. (*Id.* at 4, 9 ("I saw McDaniel strike Bechard on the back with open hand, that's when Bechard turned and told him to leave …")).

A hearing on the misconduct charge was held on June 23, 2014, with McDaniel denying that he struck Bechard.[4] (*Id.* at 11). Based largely on the inconsistency between Bechard's initial report of an argument and her later report of an assault, the Hearing Officer determined that McDaniel was not guilty of the assault charge. (*Id.*).

### 3. Grievance TCF 1406023817b

Around June 8, 2014, McDaniel began filing grievances alleging that Bechard had falsely accused him of assaulting her. (Doc. #24-1 at 5). He claims that his initial attempts to file a

---

[4] McDaniel admits his behavior was improper, but claims that it warranted only an "insolence" charge, not one for assault and battery. (Doc. #30 at 37).

grievance were "rejected for to [sic] many issues." (*Id.*). On June 26, 2014, however, McDaniel

filed grievance TCF 1406023817b (the "Grievance"), which was accepted. (*Id.*). In the

Grievance McDaniel alleged wrongful conduct *solely* against Bechard, and solely related to her

alleged false accusation that he had struck her during their argument:

> On the date of incident [,] Ms. Bechard & I had words over my job duties.
> I was sent in from my detail because of the disagreement. It was repeated
> that way to C/O Kwaiser by Ms. Bechard. After the arguement [sic] Ms.
> Bechard retaliated by writing me up for an assault on staff that never
> happened. <u>This is not on a misconduct ticket, this is on retaliation</u>. This
> Grievance has been resent since 6-8-14 several times [,] being rejected for
> too many issues. That is my cause for delay.

(Docs. #24-1 at 5; #30 at 52). McDaniel's Grievance then progressed through the MDOC's

three-step grievance process described below.

On July 18, 2014, McDaniel's Grievance was reviewed. (Doc. #24-1 at 6). The reviewer

denied McDaniel's grievance, writing:

> The Aramark associate interpreted the incident with grievant as a
> misconduct violation and wrote the ticket on grievant as "Assault and
> Battery." The misconduct [ticket] ran its course through the hearing
> process and subsequently the grievant was found not guilty. The associate
> felt the incident met the misconduct charge written and due process was
> followed. A "Not Guilty" finding does not substantiate the grievant's
> claim of retaliation. I found no policy or procedure [violation]. This
> grievance is denied.

(*Id.*). On July 24, 2014, McDaniel appealed his Step I Grievance. (Doc. #24-1 at 3). In his Step

II appeal, McDaniel wrote: "([S]ee attached) T. Bechard falsified a legal document and P. Steele

falsified documents to a notary (hearing investigator)." (*Id.*). In the document attached to

McDaniel's Step II appeal, McDaniel reported that *both* Bechard and Steele conspired and

"retaliated against [him] by filing a false misconduct of 'Assault and Battery.'" (*Id.* at 7).

McDaniel's Step II appeal was denied based on a finding that "there [were] no apparent

violations of policy and procedure enacted by staff." (*Id.* at 4).

Next, McDaniel filed a Step III appeal, asserting:

> If staff knowingly falsifies a document to officers of the state, it is an illegal act with the intent to decieve [sic] (purjury) [sic].  If this perjured document is submitted to the state to harass, defame character, punish or deprive of privillages [sic] against another for purposes of dislike or "[g]etting even" for a wrongdoing [it] is retaliation.  Staff has many violations.

(*Id*. at 3).  A Director reviewed and rejected McDaniel's Step III appeal, stating that "the Step II decision is upheld at Step III."  (*Id*. at 2).  The Director noted that he fully reviewed and considered McDaniel's "Step III grievance, including any materials included with [his] appeal from Step II," and that the grievance was "appropriately investigated" at Steps I and II.  (*Id*.).

### 4.  *McDaniel's Complaint*

On November 3, 2015, McDaniel commenced this action by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983 against Defendants.  (Doc. #1 at 1, 4).  The main focus of McDaniel's complaint is Bechard's issuance of an allegedly false assault charge against him, and Steel's submission of an allegedly false statement during the investigation of that charge.  (*Id.*).  However, McDaniel also interjected a new alleged wrong, namely that while he was in segregation, "Bechard failed to send [him] food on several occassions [sic] causing sickness."  (*Id.* at 4).  McDaniel characterizes his claims as "1.  Perjury,"[5] and "2.  8th Amend[ment] cruel and unusual punishment [and] [r]etaliation."  (*Id.*).  McDaniel seeks $300,000 in punitive damages, $20,000 in compensatory damages, as well as injunctive relief.  (*Id.* at 5).

---

[5] Defendants correctly note that although perjury is a federal crime under 18 U.S.C. § 1621, there is no "perjury" private cause of action that McDaniel may assert against them.  *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 190 (1994) (noting courts have been "reluctant to infer a private right of action from a criminal prohibition alone); *Am. Postal Workers Union, AFL-CIO, Detroit Local v. Indep. Postal Sys. Of Am., Inc.,* 481 F.2d 90, 93 (6th Cir. 1973) (acknowledging general rule "that a private right of action is not maintainable under a criminal statute); *see also Fuller v. Unknown Officials from the Justice Dep't Crime Div.,* 387 F. App'x 3, 4 (D.C. Cir. 2010) ("there is no private cause of action for perjury . . .").  Thus, McDaniel's perjury claim should be dismissed.

### 5. *Defendants' Motion to Dismiss and/or for Summary Judgment*

On January 31, 2017, Defendants filed the instant motion to dismiss and/or for summary judgment. (Doc. #24). They characterize McDaniel's claims as "asserting that Defendants violated his First Amendment rights through retaliation and conspiracy to violate his constitutional rights" and "his Eighth Amendment rights through cruel and unusual punishment." (*Id.* at 16). Defendants argue that these claims cannot stand because McDaniel: (1) failed to properly exhaust his administrative remedies; (2) cannot show Defendants are state actors[6]; and (3) failed to demonstrate a civil conspiracy or violation of his First or Eighth Amendment rights. Defendants also contend that they are entitled to qualified immunity as to McDaniel's claims.[7]

## B. Standard of Review

### 1. *Motion to Dismiss*

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[6] McDaniel raised at least a question of fact about whether Defendants are "state actors" for purposes of his claims. Defendants were affiliated with Aramark, which contracted with the MDOC to provide food to inmates – an obligation borne by the State which numerous courts have found sufficient to confer "state actor" status. *See e.g., Horn v. Hunt*, No. 2:15-CV-220, 2015 WL 5873290, at *4 (S.D. Ohio Oct. 8, 2015). Moreover, this case arises out of Bechard's filing of a misconduct charge against McDaniel, which suggests she had the power of the State behind her. *Garceau v. City of Flint*, No. 12-CV-15513, 2013 WL 5954493, at *4 (E.D. Mich. Nov. 7, 2013) ("Section § 1983 [] only permits suits against state actors—i.e. defendants who have exercised power possessed by virtue of state law and made possible only because they were clothed with the authority of state law.").

[7] Because the Court is recommending dismissal on other grounds, it declines to address Defendants' qualified immunity argument.

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must accept the factual allegations in the complaint[8] as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

---

[8] A reviewing court's consideration of a motion to dismiss under Rule 12(b)(6) is ordinarily confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Thus, assessment of the complaint's facial sufficiency ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). However, in addition to the complaint's allegations, the Court may also consider "any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). All of the materials cited herein satisfy these standards.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

### 2. *Motion for Summary Judgment*

Summary judgment is proper if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could return a verdict in favor of the nonmoving party, and a fact is "material" if it has the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Viewing the evidence in a light most favorable to the nonmoving party, the Court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). Once this occurs, the nonmoving party must counter with specific facts upon which a reasonable jury could find in its favor. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399 (6th Cir. 2010) (citing *Anderson*, 477 U.S. at 252). A mere scintilla of proof or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment. *Sierra Club v. ICG Hazard, LLC*, 781 F.3d 281, 284

(6th Cir. 2015). The Court is particularly mindful of granting summary judgment against a *pro se* litigant, and takes care to independently review of the record in the interest of justice.

**C.      Analysis**

*1.      Defendants' Exhaustion Arguments*

In their motion, Defendants first argue that McDaniel's claims are subject to dismissal because he failed to properly exhaust his administrative remedies. This argument is correct only with respect to McDaniel's claim that Bechard denied him food.[9]

**a.      *Prison Litigation Reform Act***

Defendants argue dismissal is appropriate because McDaniel failed to properly exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Under the PLRA, a prisoner may not bring a civil action, "under [§ 1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: (1) it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and (2) it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a

---

[9] The Court evaluates McDaniel's alleged failure to exhaust under the standards applicable to a 12(b)(6) motion to dismiss. *Twohig v. Riley*, No. 12-11832, 2013 WL 3773365, at *3-4 (E.D. Mich. July 17, 2013).

defendant and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

### b. *Michigan Department of Correction's ("MDOC") Grievance Policy*

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). Policy Directive 03.02.130, (effective July 9, 2007), *available at* http://www.michigan.gov/documents/corrections/03_02_130_200872_7.pdf (last visited July 25, 2017). A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶ B). The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance. (*Id.* at ¶¶ P, V). Importantly to the parties' arguments in this case, the Policy provides that the grievance must include "the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how)" as well as the "[d]ates, times, places, and names of all those involved in the issue being grieved." (*Id.* at ¶ R) (emphasis in original).[10]

If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal. (*Id.* at ¶ BB). To file a Step II grievance, the prisoner must request an appeal form from the Step I Grievance Coordinator, and then send the completed appeal form to the Step II Grievance Coordinator designated for the field or office being grieved either within ten business days after

---

[10] As the Sixth Circuit has held, a prisoner's grievance must give "prison officials fair notice of the alleged misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir.2004).

receipt of the Step I response or, if no timely response is received, within ten business days of the date the response was due. (*Id.*). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id.* at ¶ FF). Again, an inmate may only pursue a claim in federal court if he has complied with his obligations at each of these three steps. (*Id.* at ¶ B).

### c. *McDaniel Only Failed to Exhaust His Eighth Amendment Claim Related to Bechard's Alleged Denial of Food*

Defendants argue that McDaniel failed to exhaust his claims against them for three reasons: (1) McDaniel's Grievance does not mention an Eighth Amendment cruel and unusual punishment claim against Defendants and thus, Defendants did not receive fair notice of this claim; (2) McDaniel's Grievance does not mention a retaliation claim against Steele, failing to give him fair notice of a retaliation claim; and (3) McDaniel failed to "raise the argument that a misconduct ticket was issued based on retaliation or conspiracy **during the first misconduct hearing**." (Doc. #24 at 19-20) (emphasis in original).

### i. *Eighth Amendment Claims*

Liberally construing McDaniel's complaint, he alleges two different Eighth Amendment claims: (1) Bechard and Steele filed false misconduct reports against him; and (2) Bechard denied him food after he had been sent to segregation.

The law is clear that dismissal is appropriate "[w]hen a prisoner has filed a civil rights complaint in federal court without first exhausting his administrative remedies." *Taylor v. Barns*, 55 F. App'x 746, 747 (6th Cir. 2003) (citing *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1997)). The MDOC's Policy and relevant case law also make clear that an inmate who directs a grievance to a particular alleged wrong cannot bootstrap the exhaustion of that grievance into a right to raise other claims when

he files a civil complaint.  *See* Policy at ¶ R; *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011) (dismissing claim against prison doctor for alleged denial of medical care where inmate's underlying "grievance [was] exclusively concerned with the need for a transfer to a tobacco-free unit.").  Rather, under the PLRA, any claims an inmate wishes to assert in a civil complaint must first be properly exhausted.

As to McDaniel's claim that Bechard denied him food, the undisputed evidence shows that McDaniel made no reference to the alleged denial of food in his Grievance or appeals. Rather, he complained solely about alleged false accusations made against him.  Accordingly, whether or not McDaniel exhausted his claims related to the allegedly false accusations, he did not exhaust any claim about the denial of food.  *See Hall*, 443 F. App'x at 106; *Washington v. Johnson*, No. 04-10352, 2011 WL 5375189, at *4 (E.D. Mich. Nov. 4, 2011) (inmate failed to properly exhaust claims where there was no evidence that grievances "actually mentioned the mistreatment allegations the plaintiff raised in her court papers"); *Ward v. Luckey*, No. 12-CV-14875, 2013 WL 5595350, at *2 (E.D. Mich. Oct. 11, 2013).  To hold otherwise would run counter to the dual purposes of the PLRA's exhaustion requirement of (1) promoting efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and (2) protecting administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court.  *See Woodford*, 548 U.S. at 89.  In short, by not raising during the grievance process, let alone exhausting a claim that Bechard denied him food on a few occasions, the MDOC never had an opportunity to investigate and potentially resolve

this issue before McDaniel filed his complaint.[11]  Accordingly, McDaniel's Eighth Amendment claim based on this alleged conduct should be dismissed without prejudice.

The Court cannot find that McDaniel failed to exhaust his Eighth Amendment claims related to the allegedly false misconduct reports.  While Defendants are correct that nowhere in McDaniel's Grievance or appeals does he use the words "Eighth Amendment" or "Cruel and Unusual punishment," they cite no law for the proposition that he was required to use the correct legal nomenclature to properly exhaust his claims.  Indeed, Defendants cite *Bell*, 450 F.3d at 654, for its holding that an inmate's grievance must give "prison officials fair notice of ***the alleged misconduct*** that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint."  (Emphasis added).  McDaniel's initial Grievance certainly indicated that he was challenging Bechard's filing of an allegedly false report.  Thus, she was on notice of the "alleged misconduct," even if McDaniel failed to specify what constitutional right he believed that alleged misconduct violated.

As to Steele, although McDaniel did not mention him or his allegedly false report in the initial Grievance, McDaniel did so in his Step II and III appeals.  As discussed below, because

---

[11] As discussed below, the Court finds that Defendants waived the exhaustion defense as to certain of McDaniel's claims.  This does not mean, however, that McDaniel may assert whatever claims he wishes, such as his denial of food claim, in his instant complaint.  While the MDOC may have elected to ignore, for instance, McDaniel's addition at Steps II and III of claims against Steele, it cannot be said to have made the same choice with respect to issues McDaniel never raised.  *See Mattox v. Edelman*, 851 F.3d 583, 591 (6th Cir. 2017) ("prison officials waive any procedural irregularities **in a grievance** when they nonetheless address the grievance on the merits.") (emphasis added).  *See also*, *Johannes v. Washington*, No. 14-11691, 2016 WL 1253266, at *9 (E.D. Mich. Mar. 31, 2016) (finding that where "grievance screener reviewing [] grievance would have no reason to reject it for failure to name all those involved . . . there was no apparent procedural defect in [the] grievance such that it could be fairly said that the screener 'overlooked (or perhaps forgave),' [a] procedural failing.") (quoting *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010)).

the MDOC continued to consider the appeals on their merits, any exhaustion argument based on McDaniel's failure to mention Steele at Step I is waived.

*ii.* ***Retaliation and Conspiracy Claims***

Defendants argue that McDaniel failed to exhaust his administrative remedies because his *initial* Grievance does not mention a retaliation claim *against Steele* and because his Grievance appeal does not contain a conspiracy or retaliation claim against Steele. (Docs. #24 at 19; #32 at 2-3). While Defendants are correct in their assertion that McDaniel's initial Grievance only makes allegations of retaliation against Bechard, the very records Defendants attached to their motion refute their contention about the contents of McDaniel's Step II appeal.[12] (Doc. #24-1 at 5, 7). For instance, the attachment to McDaniel's Step II appeal states:

> On 6-8-2014 Aramark T. Bechard and **P. Steele retaliated against me** by filing a false misconduct of 'assault and battery' . . . . T. Bechard and P. Steele **had conspired against me** for my argumentive [sic] behavior and write me an assault and battery on staff. The retaliation is substantiated by the falsifying of documents to harm inmate McDaniel #720417 by a violation of his protected Constitutional rights and a loss of privillages [sic]. The First Amendment prohibition of retaliation.

(*Id*. at 3, 7-8) (emphasis added).

In McDaniel's response brief, he argues that because the prison administration addressed the merits of his Step II and III appeals, "rather than throwing it out for procedural defects," i.e., the addition of allegations against Steele which were not contained in his initial Grievance, Steele "can no longer assert the defense of failure to exhaust, even if [he] did not follow proper administrative procedures." (Doc. #30 at 21-23). McDaniel further argues that his Grievance "placed Defendant Steele sufficiently on notice." (*Id*. at 24-25). The Court agrees.

---

[12] In McDaniel's Step II appeal form, he writes "see attached." (Doc. #24-1 at 3). Attached to Defendants' motion is a handwritten document signed by McDaniel on July, 24, 2014, the same day he wrote his Step II appeal. (*Id*. at 7). At a minimum, a question of fact exists about the relationship of this document to McDaniel's Step II appeal.

As detailed above, McDaniel limited his Step I Grievance to alleged wrongdoing by Bechard. (Doc. #24-1 at 5). But in *Jones v. Bock*, 549 U.S. 199, 219 (2007), the United States Supreme Court stated: "[n]othing in the MDOC policy itself supports the conclusion that the grievance process was improperly invoked simply because an individual later named as a defendant was not named at the first step of the grievance process." *Id*. at 218. The Court held that that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id*. at 219. Rather, if the MDOC chooses to look past a procedural defect and consider an improperly raised issue on its merits, the fact of the procedural impropriety cannot be used to argue a failure to exhaust. *Holloway v. McLaren*, No. 15-2184, 2016 U.S. App. LEXIS 14644 (6th Cir. 2016); *Reed-Bey*, 603 F.3d at 325 ("[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we."); *Jones v. Olson*, No. 2:15-cv-156, 2016 WL 6128268, at *3-4 (W.D. Mich. Sept. 27, 2016), *report and recommendation approved*, No. 2:15-cv-156, 2016 WL 6125032 (W.D. Mich. Oct. 20, 2016) (allowing claim to proceed against two defendants named for the first time at Steps II or III because "[t]he MDOC had the opportunity to reject Plaintiff's grievance at Step II or Step III against [those defendants] for failing to name each of them in the Step I grievance" but elected not to do so).

Here, because McDaniel raised claims against Steele at Steps II and III related to her allegedly false report, the MDOC's decision to consider those claims on the merits means that McDaniel's failure to name Steele at Step I was waived.

### d.    McDaniel's Failure to Raise Retaliation and Conspiracy Claims at Misconduct Hearing

Lastly, Defendants argue that McDaniel failed to exhaust his retaliation and conspiracy claims because he did not "raise the argument that a misconduct ticket was issued based on

retaliation or conspiracy **during the first misconduct hearing**." (Doc. #24 at 19-20) (emphasis in original). Defendants rely principally on *Siggers v. Campbell*, 652 F.3d 681, 694 (6th Cir. 2011), but this case does not help them. In *Siggers*, the plaintiff argued that he exhausted his administrative remedies for his retaliation claim by having a hearing and requesting a rehearing, as required by "MDOC policy directive 03.03.105(L) and (DDD) [which] indicates that a prisoner charged with a major misconduct violation is entitled to a formal hearing and, if the prisoner would like to appeal the outcome of that hearing, the prisoner may submit a request for rehearing." *Siggers v. Campbell*, No. CIV. 07-12495, 2008 WL 5188791, at *4 (E.D. Mich. Dec. 10, 2008), *aff'd*, 652 F.3d 681 (6th Cir. 2011). The defendants moved to dismiss Siggers' claim, arguing that he failed to exhaust his administrative remedies because he was required to file a grievance in addition to requesting a rehearing. *Id*. The court agreed with the plaintiff on that issue and held that he was not required to submit a grievance because a hearing was the only administrative remedy available for challenging misconduct reports. (*Id*.). But the Court ultimately ruled in the defendants' favor because the plaintiff did not specifically complain during the hearing that the misconduct tickets constituted retaliation. *Id*.

Defendants' argument lacks merit as they ignore that McDaniel exhausted his administrative remedies through the MDOC's grievance process, not a hearing. The Court need not determine whether McDaniel's proper administrate remedy was through the grievance process or through a re-hearing because, as noted above, "[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *Reed-Bey*, 603 F.3d at 325. Moreover, there was no reason for McDaniel to ask for an "appeal" or rehearing; he was the only one charged with a violation, and he was found "not guilty."

For all of the foregoing reasons, Defendants have not shown that McDaniel failed to exhaust his retaliation and conspiracy claims against them.

### 2. McDaniel's Eighth Amendment Claims Related to the Allegedly False Misconduct Reports Are Subject to Dismissal

Although McDaniel exhausted his Eighth Amendment claims related to the Defendants' allegedly false reports that he struck Bechard, these claims are nevertheless subject to dismissal. "The Sixth Circuit has held that the filing of a false misconduct report does not constitute punishment under the Eighth Amendment." *Ford v. Kennerly*, No. 1:16-CV-243, 2016 WL 3049311, at *19 (W.D. Mich. May 31, 2016) (citing *Williams v. Reynolds*, 198 F.3d 248 (6th Cir. 1999) (unpublished table decision) ("neither verbal harassment or threats nor the filing of a false misconduct report constitute punishment within the context of the Eighth Amendment") (citations omitted) and *Bruggeman v. Paxton*, 15 Fed.Appx. 202, 205 (6th Cir. 2001) (a prisoner's claim that he was punished on the basis of a false misconduct report fails to state an Eighth Amendment claim). *See also Hill v. Hoffner*, No. 1:15-CV-1143, 2016 WL 1165405, at *5 (W.D. Mich. Mar. 25, 2016) ("Mere confinement to a cell or loss of privileges for a few days does not rise to the level of cruel and unusual punishment proscribed by the Eighth Amendment. In fact, the Supreme Court has recognized that the more serious sanction of placement in segregation, which involves even greater restrictions on a prisoner's privileges, is a routine discomfort that is 'part of the penalty that criminal offenders pay for their offenses against society.') (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)); *Cole v. Mauldin*, No. 14-11325, 2015 WL 806908, at *8 (E.D. Mich. Feb. 26, 2015) ("The filing of a false misconduct report is not "punishment" under the Eighth Amendment.") (citing *Williams*, 198 F.3d 248).

Thus, McDaniel's Eighth Amendment claims against Defendants related to the allegedly false reports should be dismissed.

### 3.    *McDaniel's First Amendment Retaliation Claim*

Defendants argue that even if McDaniel properly exhausted his retaliation claims, dismissal is appropriate because he failed to demonstrate both a violation of his First Amendment rights and a civil conspiracy.  (Doc. #24 at 11, 23-27).  A *prima facie* case for First Amendment retaliation entails three elements: (1) the plaintiff participated in constitutionally-protected activity; (2) the defendant took an adverse action against the plaintiff "likely to chill a person of ordinary firmness" from engaging in the protected conduct; and (3) there is a causal connection between elements one and two – that is, "that the adverse action was motivated at least in part by the plaintiff's protected conduct."  *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).  The analytical approach in these cases is "intensely context-driven," and while the elements remain constant between cases, "the underlying concepts that they signify will vary with the setting."  *Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010).  For this reason, whether a statement is "protected" or an official's responsive action is "adverse" frequently turns on the particular facts of a case.  *Id.*  (citing *Thaddeus-X*, 175 F.3d at 397).

### a.    *Protected Activity*

To satisfy the first element, the plaintiff must show that he was retaliated against as a result of having engaged in protected activity.  The Court agrees with Defendants that McDaniel cannot meet this requirement.  In his complaint, McDaniel asserts that he reported "countless complaints" to Bechard's supervisor and that he had an argument with Bechard who then "[lied] to authorities alleging assault."  (Doc. #1 at 4).  Moreover, in McDaniel's response brief, he

states: "The protected conduct the plaintiff was engaged [in] was the many verbal complaints to defendant Bechard's supervisor."[13]  (Doc. #30 at 33).

The problem for McDaniel is that he admitted to a longstanding feud with Bechard, and that he raised his hands up towards her, mocked her, and swore at her during the incident in question.  On the other hand, McDaniel makes no allegation whatsoever that Bechard had been disciplined by her supervisor as a result of his complaints, or was even aware of his complaints. Defendants persuasively argue that McDaniel can only state a First Amendment retaliation claim if he was retaliated against "in response to the exercise of a fundamental right."  *Boblett v. Angelone*, 942 F. Supp. 251, 254 (W.D. Va. 1996), aff'd, 121 F.3d 697 (4th Cir. 1997).  The only conclusion that can be inferred from the ***facts*** pled by McDaniel is that Bechard's alleged wrongful conduct was the result of his admitted insolent behavior during their argument.  But he had no fundamental right to raise his hands up toward her, mock her, and swear at her. Accordingly, McDaniel fails to meet the first prong of a First Amendment retaliation claim.

### b.    *Adverse Action*

Even if McDaniel satisfied the protected activity prong, the Court ultimately would reach the same conclusion about his First Amendment retaliation claim against the Defendants. McDaniel bears the burden of demonstrating that he suffered an adverse action at the hands of each of the Defendants.  In this context, an action is "adverse" if it would "chill or silence a person of ordinary firmness" from exercising the right at stake.  *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir. 2007) (citing *Thaddeus-X*, 175 F.3d at 397).

---

[13] "[A] plaintiff may not expand his claims to assert new theories for the first time in response to a summary judgment motion."  *Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. App'x 659, 666 (6th Cir. 2012) (internal citations omitted).  At the same time, pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers.  *See Thomas*, 481 F.3d at 437.  Here, the Court will liberally read McDaniel's response as presenting arguments tied to the First Amendment claim he brings in his complaint.

While the level of harassment needed to satisfy this standard is by no means stringent, *Holzemer*, 621 F.3d at 524, the plaintiff must prove more than a mere *de minimis* effect on protected activity to raise a cognizable constitutional claim. *Thaddeus-X*, 175 F.3d at 396.

McDaniel argues that "the adverse action taken by Defendant Bechard was the filing of false disciplinary charges that placed [him] in segregation." (Doc. #30 at 34).[14]  The question here, then, is whether Bechard's alleged **conduct** would chill a person of ordinary firmness from making complaints to a supervisor similar to those previously made by McDaniel.  McDaniel at least arguably meets this element. *See, e.g., Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010); *Jones v. Michigan*, 698 F. Supp. 2d 905, 916 (E.D. Mich. 2010).

### c. *Causal Connection*

The final element of a First Amendment retaliation claim puts the subjective motivation of the defendant at issue.  To satisfy this element, McDaniel was required to show that Bechard's filing of the allegedly false misconduct report was motivated, at least in part, by McDaniel's complaints to her supervisor. *Holzemer*, 621 F.3d at 525.  According to the Sixth Circuit, a "motivating factor . . . is one without which the action being challenged simply would not have been taken." *Id*.  Thus, to overcome Bechard's motion, McDaniel was required to plead, and later present sufficient facts from which it could be inferred that his alleged prior complaints to Bechard's supervisor were a "motivating factor" in her decision to file the misconduct report against him.  McDaniel failed to meet this burden.

As noted above, the only factual allegations in McDaniel's complaint (and in the documents related to his Grievance and the resolution of the misconduct charge against him),

---

[14]  McDaniel never identifies a First Amendment retaliatory adverse action taken by Steele; rather, he admits that he was placed in segregation as a result of *Bechard's* alleged wrongful conduct.  Accordingly, to the extent McDaniel alleges a separate First Amendment retaliation claim against Steele, that claim should be dismissed.

indicate that any adverse action taken against him by Bechard was done as a result of his own conduct during their argument. Absent from his complaint is an allegation that Bechard was aware of his alleged complaints to her supervisor. Instead, what is present is McDaniel's admission that he was behaving in an "insolent" manner towards Bechard, and that very shortly after the incident in question Bechard submitted the assault charge. Thus, to the extent the Court can infer any causation by considering the temporal proximity of the factual allegations in McDaniel's complaint, that, too, supports a finding that he did not properly allege that his alleged protected activity was a "motivating factor" of Bechard's challenged conduct. Nor did McDaniel present any competent evidence in opposition to Bechard's summary judgment motion to support his claim that she acted in retaliation for his having complained about her.

For the above reasons, McDaniel's First Amendment retaliation claims against the Defendants are subject to dismissal.

### 4. McDaniel's Conspiracy Claim

Finally, McDaniel maintains that Defendants formed a civil conspiracy to have him "maliciously prosecuted and punished." (Doc. #1 at 4). McDaniel seems to be alleging that Defendants conspired against him when "Bechard wrote the misconduct and Defendant Steele backed the issue with a statement of witnessing the alleged assault." (Doc. #30 at 32-33).

The Sixth Circuit has stated the standard that governs a section 1983 conspiracy claim:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011). In addition, the plaintiff must "present facts that the conspirators agreed to commit an act which deprived the plaintiff of a right, privilege or immunity secured by the Constitution or by laws of the United States." *Williams v. Kling*, 849 F. Supp. 1192, 1196 (E.D. Mich. 1994) (quoting *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988)).

In this case, McDaniel fails to meet the above standards. First, for the reasons stated above, he failed to properly allege an underlying unlawful act – the alleged retaliation – that the Defendants conspired to commit. Second, he makes only conclusory allegations that Defendants conspired with each other to issue the misconduct report against him. For instance, McDaniel merely alleges that Defendants formed a civil conspiracy to have him "maliciously prosecuted and punished," and that "Bechard wrote the misconduct and Defendant Steele backed the issue with a statement of witnessing the alleged assault." (Docs. #1 at 4; #30 at 32-33). Finally, McDaniel offered no evidence that Defendants discussed the issuance of the misconduct report and/or the role each would play in ensuring that McDaniel would be "maliciously prosecuted and punished." (Doc. #1 at 4). Therefore, dismissal of this claim is appropriate.

Moreover, "a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Advocacy Org. for Patients & Providers v. Auto Club. Ins. Ass'n.*, 257 Mich. App. 365, 384 (2003). Even if McDaniel could prove the existence of a conspiracy, he cannot show that he suffered a constitutional deprivation, since dismissal is appropriate on his First and Eighth Amendment claims. *See Scott v. Stone*, 254 F. App'x 469, 474-75 (6th Cir. 2007) (noting that success on conspiracy claim is dependent on proving deprivation of a constitutional right). Accordingly, his conspiracy claim should be dismissed.

## III.  CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Defendants' Motion to Dismiss and/or for Summary Judgment **[24]** be **GRANTED**.  McDaniels' claims should be **DISMISSED WITH PREJUDICE** except his Eighth Amendment claim based on the alleged denial of food, which should be **DISMISSED WITHOUT PREJUDICE**.

Dated: August 2, 2017
Ann Arbor, Michigan

s/David R. Grand
DAVID R. GRAND
United States Magistrate Judge


## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 2, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager